IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| N.R.S., | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV 05-024-S-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Currently before the Court for its consideration is the Petitioner's request for judicial review of the Respondent's denial of Title XVI Supplemental Security Income ("SSI") disability benefits for a minor child (docket # 1).  Petitioner brought this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g).  The Court has reviewed the Petition for Review , the parties' memorandums, and the administrative record ("AR"), and based on the following analysis, the decision of the Commissioner of the Social Security Administration will be affirmed.

# I.
# Background.

## A.   Administrative Proceedings.

On July 1, 1997, Polly Struthers (now Crist) [1] filed an application for SSI benefits on behalf of her daughter ("Petitioner").  Ms. Crist alleged disability on behalf of Petitioner since Petitioner's date of birth, June 22, 1993, based on oppositional defiant disorder, attention deficit disorder (combined type), and possible sexual abuse.  (AR 84, 90.)   The application was denied initially on and upon reconsideration.  (AR 71-74, 78-81.)  After a timely request for a hearing was filed, Petitioner, represented by counselor Debra Young Irish, appeared and testified before Administrative Law Judge (ALJ) Robert G. Holt on December 2, 1999.  ALJ Holt considered the testimony and all other evidence of record, and on May 10, 2000, issued a decision finding Petitioner not disabled within the meaning of the Act, and was therefore not entitled to SSI. (AR 15-27.)  This became the final decision of the Commissioner when the Appeals Council declined to review the ALJ's decision on December 11, 2001.  20 C.F.R. §§  416.1481 (2005).

After the Appeals Council declined to review the ALJ's decision, Petitioner filed an appeal with this federal court on February 13, 2000, Civil No. CV 02-0067-S-LMB.  The Court reversed the ALJ's decision and remanded the case for another hearing. (AR 348-63.)  A new hearing was held on August 12, 2003 before ALJ Robin Henrie.  On January 29, 2004, the ALJ again denied Petitioner's claim.  (AR 325.)  Petitioner petitioned the Appeals Council for review of the ALJ's decision on March 26, 2004, which was denied on November 23, 2004.  Petitioner

---

[1] In his decision, the ALJ refers to Petitioner's mother as Mrs. Struthers.  However, Petitioner's mother has remarried and her name has been changed to Polly Crist. (AR 462.)

has exhausted all administrative remedies and is therefore seeking judicial review pursuant to

Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**B.      Statement of Facts.**

At the time of the most recent hearing before the ALJ, Petitioner was 10 years old.  She

was four years old at the time she filed the application in 1997.  Petitioner alleged disability

since June 22, 1993, claiming disability based on severe impairments of ADHD, oppositional

defiant disorder, adjustment disorder with depression, obsessive compulsive disorder, and post

traumatic stress disorder.

Since March 1997, Petitioner has been treated and/or evaluated by various medical

professionals.  On March 3, 1997, Petitioner was evaluated by Vincent Serio, M.D.,  for

behavioral difficulties at the age of three.  Dr. Serio suspected ADD, but recommended

significant behavioral counseling before a final diagnosis because of a history of possible sexual

abuse by Petitioner's father. On March 11, 1997, Si Steinberg, M.D., (Psychiatrist) and Terry

Towle, L.P.C., evaluated Petitioner and diagnosed her with oppositional defiant disorder, with a

question of ruling out PTSD, depression, autistic characteristics and ADHD.

On May 21, 1997, Joe Lipetzky. Psy.D., performed a psychological evaluation at Dr.

Steinberg's request.  (AR 271-276.)  Dr. Lipetzky noted that Petitioner was restless and very

active during the testing session.  Petitioner scored in the borderline intellectual ability range on

testing. (AR 273.)  In addition, Petitioner's play therapy exhibited sexual themes.  Dr. Steinberg

diagnosed oppositional defiant disorder, ADD, combined type, and a provisional diagnosis of

victim of sexual abuse.

When Petitioner was enrolled in an early childhood special education program recommended by the Head Start program, the school system obtained a psychological evaluation by a school psychologist to assist in placement, Kathy Kenworthy, Ph.D. Dr. Kenworthy also noted Petitioner was very restless, active, easily distracted, impulsive, had poor social skills, and had clinically significant results on all but one category of the Connors Rating Scales test. Petitioner also had trouble communicating and the school found Petitioner was eligible for special services for the developmentally delayed because she was at least two standard deviations below the mean in one or more of the five skill areas of gross/fine motor, language, cognition, social/emotional or self help.  (AR 176-78.)

Petitioner received special assistance in her education program.  Although Petitioner did exhibit some improvement on medication, she continued to exhibit significant behavioral problems and scored below average on various I.Q. tests.  Petitioner continued special education classes through kindergarten.  Petitioner had trouble making friends, continued to have nightmares, and continued to express herself sexually.

In April 1999, Petitioner began treatment with John Hanks, M.D., who noted Petitioner was hyperactive, inattentive, and hypersexual, but performed well in school when on medication. Dr. Hanks diagnosed ADHD combined, but possibly bipolar or PTSD.  Petitioner's teachers also reported  improvement in Petitioner's behavior when on medication.  However, Petitioner continued to have off days.

On December 19, 1999, Petitioner was evaluated at Warm Springs Counseling Center by Yvette Ward, Psy.D., and E. Ann Miller Ph.D.  Dr. Ward performed testing and evaluation, which revealed that Petitioner had clinically significant elevations in hyperactivity, aggression,

conduct problems, anxiety, depression, atypicality, attention problems, adaptability, and social skills.  Dr. Ward diagnosed PTSD, chronic, ODD, psychotic disorder, NOS, and sexual abuse. She assessed a GAF of 55.  (AR 296-305.)

In the following year, Petitioner continued to be hyperactive and was kicking holes in the wall at home.  Terrie Towle, M.S.W., a counselor who saw Petitioner, recommended an increase in her medication.  While Petitioner felt sedated in the morning from the medication, she did seem more attentive.  In the Fall of 2000, the school district completed an IEP re-evaluation determining that Petitioner was no longer eligible for special education services.  Through the 2000-2001 school year and in the following 2001-2002 school year, Petitioner's behavior continued to improve, with some off days.  For the most part, her condition stabilized and her school work was better.

In March 2001, Dr. Hanks, Petitioner's primary care physician, noted that Petitioner was stable on her current medications and had improved in her school work and was making some friends.  A month later, in April, 2001, the school counselor noted that Petitioner was writing all over herself and stealing pens from school and that Petitioner was very disruptive and attention-seeking.  In addition, Petitioner was exhibiting obsessive compulsive behavior, writing numbers over and over again.  In August, 2001, Petitioner decided to stop counseling as Petitioner appeared to be doing better, but her ODD symptoms increased when Petitioner was off Remeron. Petitioner began to take Remeron again in September, 2001, and in October, 2001, Dr. Hanks referred Petitioner to a psychiatrist and for counseling. Petitioner began counseling with Ms. Towle again, who noted Petitioner's grades were dropping due to a perceived need for perfection.

**Memorandum Decision and Order - Page 5**

In January, 2002, Dr. Hanks expressed some concern with Petitioner's mood swings. Petitioner tried to choke her sister.  Dr. Hanks changed her medication, which seemed to control her mood somewhat better.  Petitioner's behavior seemed to fluctuate – one month she would appear more focused and the next month she became hyperactive, easily distracted, and impulsive with a strong tendency toward inappropriate interpersonal behaviors.  Dr. Hanks recommended a very structured environment or inpatient behavior training, diagnosing ADHD, reactive attachment disorder and adjustment disorder, with a GAF of 41.  In April, 2002, Dr. Hank noted continued problems.  In that same month, Petitioner's mother took her to a nurse practitioner at the clinic where Petitioner's mother works.  The nurse practitioner recommended changing her medication to Depakote.  Ms. Towle noticed the Depakote appeared to help, but the counselor also noted that Petitioner was hyper focused on sex and was wetting on the floor occasionally. In June, 2002, Dr. Hanks noted that Petitioner's mother reported further improvement in Petitioner's behavior and her ability to interact socially.  (AR 417-18.)

The ALJ also noted additional collateral information from Petitioner's elementary teachers regarding how she functioned at school while on medication.  In a school activities questionnaire dated October 9, 1997, it was reported that she functioned well on her medication. She had a short attention span and talked a lot in class but was able to complete her tasks on time with assistance.  She was in a early childhood special education program primarily about concerns about her behavior.  She was doing better in class; however, her mother reported that she procrastinates and would not comply at home.  Petitioner was doing her work on time and made transitions easily.  Also she interacted well with the teacher and the assistant.  (AR 147.)

**Memorandum Decision and Order - Page 6**

There were no severe problems and she played well with the other children.  It was also noted that her behavior was improving.  (AR 148.)

On April 20, 1999, another questionnaire was completed while Petitioner was attending kindergarten at Lowell Elementary School.  It was noted that her ability to focus on her school work was <u>much</u> improved when she was on her medication.  (Emphasis in original.)  She was in a regular classroom and her academics were low but she was showing improvements as medications were more regular and she had a good memory.  She needed a lot of teacher supervision to complete her assignment but could complete them as required.  Petitioner liked to please her teachers and liked recognition when successful.  There were occasional off days; however, on most days she interacted appropriately with adults.  (AR 149.)  There were days when she would "bug" and pick on other children, and while these days were frequent at the beginning, they were less frequent after her medications was adjusted.  It was anticipated that she would need close supervision to successfully complete her academic work. (AR 150.)

Petitioner's second and third grade report cards as a whole showed that she was improving, met or exceeded expectations in reading, language arts, math, social skills, science, physical education, music, art and work habits and conduct.  (AR 412-413.)  By November, 2000, the Child Study Team members, which included her mother, determined that Petitioner did not have an educational disability and did not require special education services.  (AR 405.)  While in the Fourth Grade, Petitioner's test scores in mathematics ranged from 5 lows, 1 low average and 1 high average.  Her reading goals were all rated as low.  Her language goals were 1 low, 2 averages, 1 high average and 2 highs. (AR 409)  Overall, when compared to other students in the school district for the Spring of 2003, her scores of 209 in language placed her at

the district average of 209; of 191 in mathematics, below the district average of 213; and of 186

in reading, below the district average of 207.  (AR 410.)

## II.
## Findings of the Administrative Law Judge.

In the decision issued following the hearing, the ALJ made specific findings as follows:

1.      The claimant is a 9 year old child, who was 4 years old on her
protective filing date.

2.      The child has not engaged in substantial gainful activity at any time at issue. (20
C.F.R. § 416.972).

3.      The medical evidence establishes that the claimant has Attention Deficit
Hyperactivity Disorder (ADHD), adjustment disorder with depressed mood,
oppositional defiant disorder, an obsessive-compulsive disorder and a post-
traumatic stress disorder, which constitute "severe" impairments. (20 C.F.R.
§ 416.924(c)).

3.[sic]  The medical evidence further establishes that the claimant does not have an
impairment or combination of impairment that meet or medically equals the
criteria for any listed impairment.

4.      The claimant's allegations of disabling functional limitations are not entirely
credible for the reasons set forth in the body of this decision (SSR 96-6p).

5.      The evidence establishes the following functional limitations resulting from the
combined effect of all of the claimant's impairments and reasonably related
symptoms: less than marked limitations in the domain of acquiring and using
information; marked limitations in the domain of attending and completing tasks;
less than marked limitations in the domain of interacting and relating with others;
no limitations in the domain of caring for yourself; and no limitations in the
domain of health and physical well-being.

6.      The claimant does not have a combination of medically determinable physical or
mental impairments that result in marked and severe functional limitations.

7.      The claimant has not been under a disability at any time through the date of this
decision (20 C.F.R. 416.924(d)(2).

### III.
### Standard of Review.

Under the Social Security Act, a child under the age of 18 is considered disabled if that child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 1382c(a)(3)(C)(i). A physical or mental impairment is defined by the statute as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A three-step sequential evaluation process promulgated by the Department of Health and Human Services is used to determine whether a child under the age of 18 is eligible for benefits. The ALJ considers, in the following sequence: (1) whether the child is engaged in substantial gainful activity; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the impairment, or combination of impairments, meets, medically equals, or functionally equals in severity any of the listed impairments. 20 C.F.R. § 416.924. An impairment functionally equals in severity a listed impairment if it results in marked limitations in two domains of functioning or an extreme limitation in one domain of functioning. 20 C.F.R. § 416.926a(d). The domains assessed are (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); and *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); and *Flaten v. Secy of HHS,* 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

**IV.**
**Issues Raised.**

The primary issue before the Court is whether the final decision of the Commissioner is supported by substantial evidence and whether it is based on proper legal standards. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). Petitioner contends that the ALJ erred in the following respects:

1)   The ALJ erred in finding that Petitioner's impairment or combination of impairments do not at least functionally equal the Listings.

2)   The ALJ failed to properly support his finding that the testimony of the Petitioner's mother was not credible.

3)   The ALJ failed to properly consider the need for a highly structured environment.

The Court will take each argument in order.

**A.      Meet or Functionally Equal the Listings**

Petitioner argues that the ALJ erred in not finding that the Petitioner' impairments or combination of impairments at least functionally equal the listings. A claimant functionally equals a listing when he or she is markedly limited in at least two of the six domains of functioning, or is extremely limited in one domain. Petitioner focuses on three of the six domains – acquiring and using information, interacting and relating with others, and caring for self – to argue that Petitioner is at least markedly limited in each of these three domains. It is the Court's task to determine whether substantial evidence supports the ALJ's findings in each of these three areas. Petitioner does not dispute the ALJ's finding that Petitioner was markedly limited in the domain of attending and completing tasks.

### 1. Acquiring and using information

In the domain of acquiring and using information, the ALJ must consider how well the child acquires or learns information and how well he or she uses the information learned. 20 C.F.R. § 416.926a(a). With respect to this domain, the ALJ found Petitioner has a less than marked limitation. Specific and substantial evidence supports the ALJ's finding in this area.

In finding that Petitioner has a less than marked limitation in the domain of acquiring and using information, the ALJ cited medical evidence in the record establishing that Petitioner's medications had been effective in reducing her hyperactivity, which had contributed significantly in Petitioner's ability to acquire and use information. Petitioner was no longer taking special education classes. Her second and third grade report card indicates Petitioner was improving or met or exceeded expectations in reading, effort, listening attentively, and following directions. While Petitioner had received a D in social studies and science, she had received an A in spelling, B in Language Art, and C's in reading, math, and health. The ALJ further noted that Petitioner was able to answer his questions "quite quickly and adequately." (AR 338.) Petitioner appeared to read well and she was able to perform the multiplication and division problems well.

The ALJ found the testimony of Ms. Crist partially credible to the extent Petitioner has some limitations in acquiring and using information. However, in partially discounting the testimony of Ms. Crist in this regard, the ALJ reported that Ms. Crist "appeared flabbergasted that [her daughter] could read and do math so well." (AR 338.) The ALJ interpreted Ms. Crist's reaction as an indication that Petitioner functions at a higher level than she "sometimes lets on" and he found Petitioner "can do well when she wants to." *Id.* This Court must give

due deference to the observations of the ALJ of the demeanor of Ms. Crist at the hearing.

After all,  the ALJ was present and was able to observe the reaction of the Petitioner's mother,

which is not captured in a written transcript.  A review of the record as a whole shows

substantial evidence to support the ALJ's conclusion that Petitioner's limitation in acquiring

and using information was less than marked.  Accordingly, the Court finds that the ALJ's and

the Appeals Council's decisions in this regard should not be reversed.

**2.  Interacting and relating with others**.

Petitioner next argues that the ALJ should have found that Petitioner exhibited marked

impairment in the domain of interacting and relating with others.  When assessing this domain,

the ALJ must consider how well the Petitioner initiates and sustains emotional connections

with others, develops and uses the language of their community, cooperates with others,

complies with rules, responds to criticism, and respects and takes care of the possessions of

others.

In his decision in this regard, the ALJ discussed Petitioner's testimony that she had

spent her summer playing games, going swimming with a summer swim pass, and occasionally

going to water parks.  When asked, Petitioner stated that she did not get along with kids at

school "very well."  (AR 475.)  Comments from her report cards while in the first grade

include, "She gets along very well with other students and listens well in class." (AR 414.)  In

the second grade, her teacher noted, "She has a good attitude towards her school work and

towards others."  (AR 413.)  In the third grade, it was felt that her frequent late arrivals for

school were affecting her attitude.  (AR 412.)  The April, 2003, comment by her fourth grade

teacher in the  was:

> [N] has continued to work hard to improve her academic skills.  She completed
> 19 book reports.  At this time, [N] is considered the "class expert" in writing
> summaries for book reports.  She has quite a flair for this literary skill.  [N]
> continues to make positive behavior choices in class.  I appreciate her effort to
> strengthen her social skills.  Keep up the great  work.

(AR 396.)

Petitioner testified she likes her grandmother, her father, and her sister even though she gets mad at her sister.  Although the ALJ noted  medical records documenting Petitioner's history of a need for control, aggression with her mother, and sexual themes in her play, the ALJ further found that Petitioner's behavior improved with medication and she seemed to be making friends as the result of a dramatic increase in her social skills.  The ALJ found that any concerns with mood swings and excessive aggression towards her mother and younger sister in 2002 had been remedied with a medication change.  The ALJ found that Petitioner had taken a more active role in classroom activities and was developing relationships with peers.  For these reasons, and partially discounting the testimony of Ms. Crist that Petitioner was very controlling with her friend Claudia who would frequently go home sooner than planned, the ALJ concluded that Petitioner had a less than marked limitation in the domain of interacting and relating with others.

Whether a court might draw different inferences from the evidence than did an administrative law judge is not the issue; if the administrative law judge's decision is supported by substantial evidence it must stand.   In this case, the Court finds that  the ALJ's finding is supported by substantial evidence.  The medical records indicate that Petitioner has made great strides in her interaction with others.  Ms. Crist testified that Petitioner interacted well with adults and had acknowledged on different occasions that Petitioner's social skills

were improving.  Despite Ms. Crist's testimony that Claudia went home early, even Ms. Crist

acknowledged Petitioner and Claudia got along well.  Where substantial evidence supports the

ALJ's decision, the decision may not be reversed merely because evidence may support a

different outcome.  *See, e.g., Verduczco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

### 3. Caring for herself.

In this domain, consideration is given to how well a child maintains a healthy

emotional and physical state, including how well they get their physical and emotional wants

and needs met in appropriate ways; how they cope with stress and changes in their

environment, and whether they take care of their own health, possessions, and living area.  20

C.F.R. § 416.926a(k)(1).

The ALJ found Petitioner exhibited less than marked limitations in this area.  In

reaching this conclusion, the ALJ took into consideration Mrs. Crist's testimony that Petitioner

needs to be reminded to do her chores and her room is messy but her bed is neat; that she takes

five to six showers a day; that she will run across the street without looking for cars; and that

she is unsure if Petitioner knows right from wrong.  The ALJ also considered Petitioner's

testimony that she spent her summers playing games, swimming and going to water parks, and

that she was able to do chores such clean her room, sweep, vacuum, and clean the house.   The

ALJ noted Petitioner's  previous test results had shown Petitioner suffered mild deficits in

daily living skills indicated behaviors consistent with ODD, but that her medications

sufficiently controlled these behaviors.  In addition, the ALJ observed that Petitioner's therapy

notes showed improvement in her disposition.  In sum, the ALJ found that Ms. Crist's effective

disciplinary action had addressed the "negligible behaviors such as stealing and lying," discussed in the record.

As a whole, the record supports the ALJ's finding that Petitioner was less than markedly limited in her ability to care for herself.

### B.    Ms. Crist's Credibility.

Petitioner argues that the ALJ failed to provide specific reasons for finding the testimony of Ms. Crist, Petitioner's mother, only partially credible.  Specifically, the ALJ found Ms. Crist's testimony was only partially credible as to Ms. Crist's assessment of Petitioner's ability to acquire and use information as the medical records indicated Petitioner's condition had improved substantially with medication and because Ms. Crist "appeared flabbergasted" that Petitioner completed the reading and math questions so well at the hearing. In addition, the ALJ found Ms. Crist's testimony was not entirely credible with respect to Ms. Crist's statements relating to Petitioner's ability to interact with others because the medical evidence, as well as Petitioner's school records, indicated Petitioner's social actions had improved since being on medications and behavior therapy.

Although courts have upheld the use of lay testimony in some instances, *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, (9th Cir. 1984), *citing Singletary v. Secretary of HEW*, 623 F.2d 217 (2d Cir.1980), it is not the equivalent of "medically acceptable ··· diagnostic techniques" that are ordinarily relied upon to establish a disability. *See* 42 U.S.C. § 423(d)(3); *Hall v. Secretary of HEW*, 602 F.2d 1372 (9th Cir.1979).  Therefore, the ALJ properly discounted the testimony of Ms. Crist that contradicted the medical evidence and Petitioner's school records.

### C.  Structured or Highly Supportive Environment.

Petitioner argues the ALJ failed to properly consider the need for a highly structured environment.  Pursuant to § 416.924(b)(5)(iv)(C), an ALJ must consider the effect that a structured or highly supportive setting, such as a special classroom or an accommodating regular classroom, may have on children who "spend much of their time" in these settings. If a child claimant's symptoms are controlled or reduced by the environment in which he lives, the ALJ must consider the claimant's ability to function independently, appropriately and effectively in an age appropriate manner outside of this highly structured setting. *Id*.

In November, 1999, Petitioner was receiving special education services four times a week for 30 minutes at a time.  However, in November, 2000, Petitioner no longer required special education services.  In a regular classroom environment, the evidence shows Petitioner may have required a little prodding to complete her assignments at school, overall, Petitioner's medication reduced her hyperactivity and raised her ability to concentrate to a level where she could perform at school.

At the time of the hearing, Petitioner was ten years old and required the supervision of a babysitter.  However, it is not unusual for a ten-year old to require the supervision of a babysitter.  As such, the ALJ properly concluded that the Petitioner could function independently, appropriately, effectively and on a sustained basis outside of a highly structured setting because in fact she had been doing so relatively successfully for a number of years at home and at school.

**V.**
**Conclusion.**

Based on its review of the entire record, the Court finds that the Commissioner's

decision is supported by substantial evidence and is the product of legal error.  Therefore, the

Commissioner's decision finding that the Petitioner is not disabled within the meaning of the

Social Security Act will be affirmed.

**<u>ORDER</u>**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT**

**IS HEREBY ORDERED that** the Commissioner's decision finding that the Petitioner is not

disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for

review is **DISMISSED**.



DATED: **March 31, 2006**

_____

Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 18**